# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF NEBRASKA,<br>STATE OF MISSOURI,<br>STATE OF ARKANSAS,<br>STATE OF IOWA,<br>STATE OF KANSAS, and<br>STATE OF SOUTH CAROLINA,<br><br>   *Plaintiffs*,<br><br> v.<br><br>JOSEPH R. BIDEN, Jr.,<br>in his official capacity as the President of<br>the United States of America;<br><br>MIGUEL CARDONA, in his official<br>capacity as Secretary, United States<br>Department of Education; and<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION,<br><br>   *Defendants*. | No. 4:22-cv-01040 |

## <u>DECLARATION OF JAMES RICHARD KVAAL</u>

I, James Richard Kvaal, do declare under penalty of perjury and pursuant to 28 U.S.C.

§ 1746, that the following is true and accurate to the best of my information and belief:

1.  I am the Under Secretary of Education at the United States Department of

Education (Department). My nomination for this position was confirmed by the United States

Senate on September 14, 2021, and I was sworn in on September 15, 2021. I am a duly

authorized Custodian of Records, or other qualified witness for the Department, located in

Washington, District of Columbia. As such, I am fully competent to make the statements

1

contained in this Declaration and I have authority to certify the attached records. I make this declaration based on my personal knowledge, based on information provided to me in my official capacity.

2.       As the Under Secretary of Education, my responsibilities include the coordination of major policies, programs, and activities related to Postsecondary Education and Federal Student Aid for the Department. This includes, but is not limited to, the development of policies, procedures, and directives related to the August 24, 2022 decision of the Secretary of Education (Secretary) to provide one-time student loan debt relief under the Higher Education Relief Opportunities for Students Act of 2003 (HEROES Act).

3.       In execution of my responsibilities, I have under my custody and control documents related to the decision of the Secretary to provide one-time student loan debt relief. These documents are: (A) an August 24, 2022 memorandum from myself to the Secretary recommending the Secretary exercise his discretion under the HEROES Act to issue waivers and modifications necessary to effectuate one-time student loan debt relief, including an August 24, 2022 document titled "Rationale for Pandemic-Connected Loan Discharge Program" that was attached to my memorandum, (B) an August 24, 2022 memorandum from the Secretary to Federal Student Aid Chief Operating Officer Richard Cordray and signed by the Secretary reflecting his determination to issue waivers and modifications necessary to effectuate the one-time student loan debt relief program, and (C) a September 27, 2022 memorandum from the Secretary to the Chief Operating Officer and Assistant Secretary for Postsecondary Education Nasser Paydar, issuing the specific waivers and modifications and directing their implementation and publication in the *Federal Register*. These documents are attached as exhibits A, B, and C, respectively.

4.      I also have under my custody and control documents related to the Department's decision that Federal Family Education Loan Program (FFELP) borrowers who did not apply to consolidate into the Direct Loan Program (DLP) before September 29, 2022 would not be eligible to receive one-time loan student debt relief. These documents are: (D) a September 28, 2022 copy edit document showing these changes to the Frequently Asked Questions (FAQ) web page for the one-time student loan debt relief on Federal Student Aid's website, (E) a September 28, 2022 copy of the task order created to communicate these changes to Accenture, the Department's contractor, and (F) an automatically-generated email from Federal Student Aid's web content system from 10:45 PM ET on September 28, 2022 communicating this task order to Accenture to update the FAQ web page with the contents described in the copy edit document. These documents are attached as exhibits D, E, and F, respectively. The names of Accenture employees have been redacted.

5.      Over the next several weeks, the Department will be taking steps to implement the debt relief plan, potentially including continuing to communicate with servicers regarding implementation, sending emails notifying borrowers eligible for automatic relief of their eligibility and the option to opt out, communicating with borrowers and other interested parties concerning debt relief, conducting testing of the application form with members of the general public before the application form is fully launched (including sending emails inviting members of the public to participate in such testing), and announcing and opening the application form. The Department will not discharge any student loan debt under the debt relief plan prior to October 23, 2022.

6.      I certify that each of the attached records: (1) is the original or a duplicate of the original record in the custody of the Department; (2) was made at or near the time of the

3

occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (3) was kept in the course of the Department's regularly conducted activity; and (4) was made in the course of the regular conduct of the Department.  These documents will all be part of the Administrative Record in this case.  I am providing them now as part of the Department's opposition to Plaintiffs' motions for a temporary restraining order and a preliminary injunction, which were filed contemporaneously with Plaintiffs' complaint (i.e., before the compilation and certification of an administrative record).

Executed on this 7th day of October, 2022.

James Richard Kvaal

# Exhibit A



*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

UNITED STATES DEPARTMENT OF EDUCATION

THE UNDER SECRETARY

DATE:                             August 24, 2022

TO:                               Miguel A. Cardona, Ed.D.
                                  Secretary of Education

FROM:                             James Kvaal
                                  Under Secretary of Education

SUBJECT:                          Pandemic-Connected Loan Cancellation

In March 2020, Congress determined that, in light of the COVID-19 pandemic, it was necessary to provide relief to student loan borrowers by suspending certain payments and collections activity, and temporarily setting certain interest rates to zero percent. Under the authority granted to the Secretary of Education by the Higher Education Relief Opportunities for Students Act of 2003 ("HEROES Act"), you previously extended this relief through August 31, 2022.

This payment pause has delivered substantial relief to millions of loan borrowers, seeking to ensure that they are not in a worse position financially due to the pandemic. However, when loan payments resume, many borrowers will be at heightened risk of loan delinquency and default that could offset the benefits provided by the pause and leave borrowers worse off than they were before the pandemic. As outlined in the attached analysis prepared by your advisors, many borrowers will experience challenges in the transition back to repayment. Additional steps are needed to address these challenges and reduce the likelihood of delinquency and default to ensure that borrowers are not in a worse position financially due to the pandemic with regard to their ability to repay their loans.

In order to ensure that borrowers subject to the payment pause are not placed in a worse position financially by the COVID-19 national emergency as they restart payments, I recommend that you exercise your discretion under the HEROES Act to issue waivers and modifications necessary to effectuate the following actions:

- Discharge $10,000 of federal student loan balances for borrowers with individual incomes of under $125,000 or household incomes of under $250,000 during tax years 2020 or 2021. These discharges would be limited to loans that were originally outstanding as of June 30, 2022, and that are currently subject to the payment pause, including Direct Loans, Federal Family Education Loans held by the Department or by guaranty agencies, and Federal Perkins Loans held by the Department.

- Discharge an additional $10,000 in federal student debt for borrowers who meet these requirements and who also received a Pell Grant at some point in the past.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

Page 2

- Take the administrative steps needed to implement this discharge initiative, including the collection, maintenance, use, and dissemination of borrower information necessary to establish eligibility for the discharge under the relevant criteria and provide benefits under the initiative automatically to as many borrowers as possible utilizing income information available to the Department in compliance with applicable law.

- Develop a simple process for borrowers to attest to their incomes and for FSA to verify the income of a sample of those borrowers.

Based on current economic and public health conditions, and to provide time to successfully implement these measures needed to ensure that borrowers are not placed in a worse position financially due to the pandemic, I also recommend that you extend those waivers and modifications specified in the December 11, 2020, *Federal Register* notice (85 Fed. Reg. 79856), that relate to the payment and collection of, and accumulation of interest on, federal student loans, and also extend the corresponding pause for Federal Family Education Loan Program loans held by guaranty agencies, as discussed in Dear Colleague Letter GEN-21-03 through December 31, 2022. Because this extension is expected to be the final extension of the payment pause, I further recommend that you direct FSA to take all necessary steps to restart loan payments after December 31, 2022.

**If you approve these recommendations, please sign the attached memorandum to the Chief Operating Officer of Federal Student Aid.**

Attachments:

1. Rationale for Pandemic-Connected Loan Cancellation Program

2. Memorandum to Chief Operating Officer Cordray prepared for your signature

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

**Rationale for Pandemic-Connected Loan Discharge Program**
**August 24, 2022**

### I.   Background

In March 2020, Congress determined that, in light of the COVID-19 pandemic, it was necessary to provide relief to student loan borrowers by suspending certain payments and collections activity, and temporarily setting certain interest rates to zero percent. Under the authority granted to the Secretary of Education by the Higher Education Relief Opportunities for Students Act of 2003 ("HEROES Act"), the Secretary previously extended this relief through August 31, 2022.

This payment pause has delivered substantial relief to millions of loan borrowers, seeking to ensure that they are not in a worse position financially due to the pandemic. However, when loan payments resume, many borrowers will be at heightened risk of loan delinquency and default that could offset the benefits provided by the pause and leave borrowers worse off than they were before the pandemic. Many borrowers will experience challenges in the transition back to repayment. Additional steps are needed to address these challenges and reduce the likelihood of delinquency and default to ensure that borrowers are not in a worse position financially due to the pandemic regarding their ability to repay their loans. As detailed below, the Department of Education could mitigate these consequences by taking the following steps:

- Discharging $10,000 of federal student loan balances for borrowers with individual incomes of under $125,000 or household incomes of under $250,000 during tax years 2020 or 2021. These discharges would be limited to loans that were originally outstanding as of June 30, 2022, and that are currently subject to the payment pause, including Direct Loans, Federal Family Education Loans held by the Department or by guaranty agencies, and Federal Perkins Loans held by the Department.

- Discharging an additional $10,000 in federal student debt for borrowers who meet these requirements and who also received a Pell Grant at some point in the past.

This paper summarizes the basis for and key design elements of this proposal and presents relevant considerations and evidence. It is not an exhaustive list of all the decisions required to operationalize a pandemic-connected loan discharge program, nor is it a complete inventory of all pieces of supporting evidence the Department considered.

### II.   Analysis

#### A.   Potential Harm to Borrowers from the Pandemic as Payments Restart

The student loan payment pause, initiated at the outset of the pandemic, protected borrowers from financial harm by allowing them to forgo payments, preventing any interest accrual on their debts, and halting all collections on student loans. Despite these measures, many student loan borrowers remain at risk of being placed in a worse position financially as a result of the COVID-19 pandemic and its associated economic effects. Historical evidence suggests that loans are at heightened risk of delinquency and default as they exit forbearance. Economic conditions and surveys of borrowers suggest that, absent additional relief, the harmful effects of the pandemic may make repayment more difficult for student loan borrowers than it was before the pandemic, especially for lower income borrowers.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

### 1. Risk of Delinquency and Default Following Long Periods of Forbearance

Past experience with student loan borrowers transitioning back into repayment after long periods of forbearance raise concerns about the potential for elevated risk of delinquency and default. Although there is no exact analogue for the circumstances surrounding the current payment pause, the Department has previously provided borrowers experiencing local and regional natural disasters, such as hurricanes, earthquakes, or wildfires, with access to forbearances with similar provisions. When borrowers accessing natural disaster forbearances transitioned back into repayment, there were documented spikes in student loan defaults.[1]

Analysis of the outcomes of borrowers placed in mandatory administrative forbearances triggered by Hurricanes Maria, Harvey, and Irma and the northern California wildfires in late 2017 show that, compared to the calendar year before the disaster declaration, the incidence of default increases substantially six quarters later. Specifically, only 0.3 percent of borrowers entered default in the calendar year before the declaration, while 6.5 percent of borrowers entered default in the calendar year after they exited mandatory administrative forbearance.[2]

Furthermore, Pell Grant recipients affected by these events experienced larger increases in default compared to non-recipients after exiting mandatory administrative forbearance. While Pell Grant recipients and non-recipients had similar probabilities of entering default in the calendar year prior to the disaster declaration, 7 percent of Pell borrowers enter default in the calendar year after exiting mandatory administrative forbearance compared to 5 percent of non-recipients.[3]

### 2. Current Economic Conditions Facing Borrowers

Borrowers themselves report that they will be less likely to keep up with repayments on their student loan debt when payments resume, despite benefiting from the repayment pause and stimulus support during the course of the pandemic. Among borrowers with income below $125,000 who had also been making payments in 2019, a substantially higher number anticipate having trouble making full payments in the future than reported not making regular payments before the pandemic. For example, of those with income under $40,000, only 26 percent reported never or occasionally making full payments in 2019, but 51 percent in this group expect to have difficulty making full or even any payments in the future. Of those with income between $40,000 and $75,000, 18 percent were unable to make full payments in 2019, but 36 percent expect to be unable to cover their monthly payments in the future. Similarly, for borrowers with income between $75,000 and $125,000, 18 percent reported making occasional or no payments prior to the pandemic, but 24 percent expect to make less than full payment when the pandemic forbearance ends.[4]

Because borrowers expect increased payment difficulties, even after accounting for the benefits they received from the repayment pause and stimulus, it is likely that the net effect of the pandemic—absent

---

[1] Kaufman, Ben. "New Data Show Student Loan Defaults Spiked in 2019-A Warning to Industry and DeVos Amid Economic Fallout," Student Borrower Prot. Ctr., Mar. 13, 2020.

[2] Department of Education analysis of administrative data. These analyses are based on borrowers who had at least one active Department of Education-held loan, were placed in mandatory administrative forbearance for at least one day in the period spanning a week prior to the disaster start date and 90 days after this date, and who had an address in a state (and county, when relevant) that was a federally declared disaster area.

[3] Ibid. Information on income is not available for most borrowers placed in mandatory administrative forbearance following these federally declared major disasters, thus a similar analysis exploring default rates among borrowers with different incomes was not feasible.

[4] Akana, Tom, and Dubravka Ritter. "Expectations of Student Loan Repayment, Forbearance, and Cancellation: Insights from Recent Survey Data." Federal Reserve Bank of Philadelphia, 2022, Table 1.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

other compensatory actions—would be to increase delinquency rates further. If borrowers' recollections of past repayment success and expectations for future repayment capacity translate directly into their future repayment success, borrowers' delinquency rates will be higher than pre-pandemic levels when those compensatory actions end, absent additional relief.

Research by the Consumer Financial Protection Bureau using credit bureau data provides evidence from the balance sheets of student loan borrowers that substantiates the concerns reported by borrowers in the above survey. While delinquencies on non-student debt among student loan borrowers dipped during 2020, delinquencies rose in the second half of 2021, and have since returned to pre-pandemic levels, despite the fact that most student loans remained in forbearance.[5] The authors suggest that non-student debt delinquencies rose as pandemic interventions were retired. Borrowers who have defaulted on their student loans are also more likely to be under water on other types of debt.[6]

For lower-income student loan borrowers, delinquency rates on non-student loan debt were higher in February 2022 than in March 2020 before the start of the pandemic.[7] These rising delinquency rates suggests that these borrowers' student loan delinquency rates also would have risen, had repayments not been paused. In fact, we would expect difficulties keeping up with debt payments to be even higher if individuals had not received the benefit of the repayment pause and other stimulus support. These findings also suggest that, absent additional relief, when the student loan repayment pause ends, student loan delinquency rates will follow a similar trajectory as other debt delinquency rates and increase.

Analyses of credit report data by the Federal Reserve Bank of New York comparing federally owned loans (which benefitted from the pause) to federally guaranteed loans and private student loans (which did not) concluded that borrowers with commercially held FFEL loans who were not protected by the payment pause saw their delinquency rates return to pre-pandemic levels, despite other forms of economic support.[8] These borrowers' delinquency rates would likely have been higher if not for this support. The study concluded that, absent further relief, when payments resume, borrowers will likely experience increased delinquencies on federal student loans and other types of debt beyond pre-pandemic levels.[9]

The rise of inflation to levels not seen in 40 years also creates significant pressures on family budgets and thus raises the risk of delinquency and default. Initially, COVID-induced supply-chain disruptions in tandem with strong demand for consumer goods led inflation to begin to accelerate in the spring of 2021, although other factors (such as Russia's invasion of Ukraine) have also contributed recently.[10] Research also suggests that inflationary pressures are most acute for those with lower incomes, particularly as prices are rising quickly for basic necessities, including energy, food, and shelter costs.[11]

---

[5] Conkling, Thomas S., Christa Gibbs, and Vanessa Jimenez-Read. "Student Loan Borrowers Potentially At-Risk When Payment Suspension Ends." Consumer Financial Protection Bureau Office of Research, forthcoming.

[6] Blagg, Kristin. "Underwater on Student Debt: Understanding Consumer Credit and Student Loan Default." Urban Institute, 2018.

[7] Conkling, Thomas S., Christa Gibbs, and Vanessa Jimenez-Read. "Student Loan Borrowers Potentially At-Risk When Payment Suspension Ends." Consumer Financial Protection Bureau Office of Research, forthcoming.

[8] Goss, Jacob, Daniel Mangrum, and Joelle Scally. "Student Loan Repayment during the Pandemic Forbearance," No. 20220322. Federal Reserve Bank of New York, 2022.

[9] Ibid.

[10] LaBelle, Jesse, and Ana Maria Santacreu. "Global supply chain disruptions and inflation during the COVID-19 pandemic." *Federal Reserve Bank of St. Louis Review* (2022).

[11] Argente, David, and Munseob Lee. "Cost of Living Inequality During the Great Recession." *Journal of the European Economic Association*, 19.2, 2021, pp. 913-952. Also see, Larsen, Daryl, and Raven S. Molloy. "Differences in Rent Growth by Income 1985-2019 and Implications for Real Income Inequality." No. 2021-11-05-3, Board of Governors of the Federal Reserve System (US), 2021.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

Borrowers who go delinquent or default on their student loans suffer substantial negative penalties. The Department reports loans more than 90 days delinquent or in default to the major national credit bureaus, which has been shown to be correlated with a 50-to-90-point drop in borrowers' credit scores.[12] These notations can remain on borrowers reports for up to seven years, making insurance, rent, and other financial products less affordable and hinder borrowers' ability to get a job.[13] Borrowers who default lose access to affordable repayment options and flexibilities at the same time their balances become due immediately. Additionally, their accounts are subject to collection feeds and involuntary collections like wage garnishment, Treasury offset, and litigation.

### B. Pandemic-Connected Loan Discharge Will Reduce These Harms

#### 1. Discharges Are Likely to Reduce Delinquency and Default Rates

An immediate discharge of loan balances would mitigate the financial harm caused by the pandemic for millions of borrowers by eliminating debt entirely or reducing the monthly payment burden. Balance elimination or reduction is likely to reduce delinquency and default and increase short- and long-term repayment success.

Reducing student loan balances can improve borrowers' ability to repay remaining debts. In a study of the effects of private student loan discharges provided to borrowers in default, researchers found that following debt discharges of approximately $8,000, borrowers reduced their total liabilities (excluding student loans) by more than $4,500.[14] Additionally, borrowers were less likely to be delinquent on other accounts, file for bankruptcy, be subject to foreclosure, or default on mortgages or medical bills following debt relief.[15]

Studies of mortgage modifications have shown that reducing monthly payments can have a significant ameliorative effect on delinquency and foreclosure: lenders have found that payment reductions of between about 20 percent and 30 percent were effective in reducing defaults.[16] A study of the JPMorgan Chase Institute's short-term payment reduction program found that every 1 percent of payment reduction reduced default rates by about 1 percent.[17]

Loan discharges can reduce delinquency and default risks even though borrowers have other options to reduce monthly payments, like income-driven repayment (IDR) plans. Many borrowers who are eligible for IDR plans are not yet enrolled. Recent research from the JPMorgan Chase Institute, for instance, showed that 22 percent of their sample were eligible for IDR but not enrolled.[18] The Federal Reserve Bank of Philadelphia's survey study notes that lower-income individuals were much less likely to expect

---

[12]  Blagg, Kristin. "Underwater on Student Debt: Understanding Consumer Credit and Student Loan Default." Urban Institute, 2018.

[13] Elliott, Diana and Ricki Granetz Lowitz. "What Is the Cost of Poor Credit?." Urban Institute, 2018; Corbae, Dean, Andrew Glover, and Daphne Chen. "Can Employer Credit Checks Create Poverty Traps?" *2013 Meeting Papers*, No. 875, Society for Economic Dynamics, 2013.

[14] Di Maggio, Marco, Ankit Kalda, and Vincent Yao. "Second Chance: Life Without Student Debt." No. w25810, National Bureau of Economic Research, 2019.

[15] Ibid.

[16] An, Xudong, et al. "Inequality in the Time of COVID-19: Evidence from Mortgage Delinquency and Forbearance." No. 21-09, Federal Reserve Bank of Philadelphia, 2021.

[17] Ganong, Peter, and Pascal Noel. "Liquidity versus wealth in household debt obligations: Evidence from housing policy in the great recession." *American Economic Review*, 110.10, 2020, pp. 3100-3138.

[18] Greig, Fiona and Daniel M. Sullivan. "Income Driven Repayment: Who Needs Student Loan Payment Relief?", JP Morgan Chace Institute, June 2022.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

to make full payments notwithstanding the existence of IDR plans.[19] The visibility of a student loan discharge program, combined with the clear benefit to borrowers, will likely attract these borrowers to apply in numbers that FSA's efforts to increase enrollment in IDR have not.

Loan discharge may also indirectly reduce delinquency and default rates. The Department intends to use the attention generated by loan discharges, and the likely applications filed by millions of borrowers, to encourage borrowers to take advantage of other federal repayment benefits and protections like IDR. Borrowers using income-driven repayment plans have significantly lower rates of default and delinquency than borrowers who do not use those plans.[20] The loan cancellation process will also require borrowers to provide updated contact information that will improve targeted communications and interventions toward borrowers at risk delinquency and default. An Urban Institute scholar recently recommended a similar approach, making loan cancellation contingent on borrowers restarting payments, for similar reasons.[21]

### 2. Amount of Debt to Discharge

Given the Department's goals, it should discharge an amount of debt necessary to significantly decrease the rates of delinquency and default. Although discharging the entire loan amount would permanently avoid this harm, lesser discharge amounts will mitigate the risk that delinquency and default rates will rise above pre-pandemic levels.

If the Department forgave up to $20,000 in debt, the Department estimates that if all borrowers claimed the relief they were entitled to, approximately 20 million borrowers would have their loan eliminated entirely.[22] Borrowers with low balances tend to have lower incomes and higher default rates.[23] Thus, low-balance borrowers are at particular risk of being in a worse financial position because of the pandemic absent further relief.

Department estimates suggest that, if all borrowers claimed the benefits to which they are entitled, an additional 23 million borrowers would see their balances reduced, with median debt falling from $29,400 to $13,600.[24] The Department would reamortize borrowers' remaining balances to reduce monthly payments after applying the discharge.

The Department estimates the payment pause has saved the average borrower in repayment approximately $233 a month.[25] Among vulnerable borrowers, a similar $200 to $300 reduction in monthly payments could be achieved by the proposal. As a result, for many borrowers, the balance reduction provided by discharge would reduce monthly payments at similar levels to the relief provided during the pause. For example, for a hypothetical borrower midway through loan repayment, the

---

[19] Akana, Tom, and Dubravka, Ritter. "Expectations of Student Loan Repayment, Forbearance, and Cancellation: Insights from Recent Survey Data." Federal Reserve Bank of Philadelphia, 2022, Table 1.

[20] Conkling, Thomas S., and Christa Gibbs. "Borrower experiences on income-driven repayment." *Consumer Financial Protection Bureau Office of Research Reports Series,* 19-10, 2019.

[21] Chingos, Matthew. "How Forgiveness Could Support the Student Loan Restart." Urban Institute, 2022.

[22] Department of Education estimates using administrative federal student aid data and imputed income from Census data.

[23] Scott-Clayton, Judith. "The looming student loan default crisis is worse than we thought*." Brookings Institution Evidence Speaks Reports*, Vol. 2, #34, 2018; Looney, Adam, and Constantine Yannelis. "A crisis in student loans?: How changes in the characteristics of borrowers and in the institutions they attended contributed to rising loan defaults." *Brookings Papers on Economic Activity*, 2015, no. 2, 2015, pp. 1-89.

[24] Department of Education estimates using administrative federal student aid data and imputed income from Census data.

[25] Department of Education estimates using administrative federal student aid data.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

estimated reduction in median balances from $29,400 to $13,600 would result in an approximately $300 reduction in monthly payments.[26]

Studies of mortgage modification programs have shown that payment reductions of between 20 and 30 percent are effective at reducing the rate of delinquency.[27] Using administrative data, the Department estimates that if all borrowers claimed the benefits to which they were entitled, among borrowers who do not receive full forgiveness, a maximum benefit of $10,000 in cancellation would lead to a median reduction in payments of 31 percent, while a maximum benefit of $20,000 in cancellation (where the additional relief is only available to Pell recipients) would lead to a median reduction in payments of 38 percent.[28]

### C. Borrower and Loan Eligibility

#### 3. Borrower Income Threshold

Many borrowers have been harmed by the pandemic and may be at greater risk of delinquency or default than they were before the pandemic. However, not all borrowers are equally at risk of these outcomes. Research shows that student loan repayment is correlated with income, and lower income borrowers are more likely to experience delinquency and default.[29]

Borrowers who are either individuals with incomes under $125,000 or belong to households with incomes under $250,000 are more likely than individuals above those thresholds to experience financial hardship in making payments on their loans when payments resume.

---

[26] Specifically, a borrower on the standard 10-year plan with an original balance of $29,400, a 5 percent interest rate, and five years of payments remaining would see these benefits

[27] An, Xudong, et al. "Inequality in the Time of COVID-19: Evidence from Mortgage Delinquency and Forbearance." No. 21-09, Federal Reserve Bank of Philadelphia, 2021; Ganong, Peter, and Pascal Noel. "Liquidity versus wealth in household debt obligations: Evidence from housing policy in the great recession." *American Economic Review*, 110.10, 2020, pp. 3100-3138.

[28] These estimates would apply to a borrower who receives forgiveness but does not have their balance fully discharged and who has made their scheduled payments on the 10-year standard repayment plan since entering repayment.

[29] Looney, Adam, and Constantine Yannelis. "A crisis in student loans?: How changes in the characteristics of borrowers and in the institutions they attended contributed to rising loan defaults." *Brookings Papers on Economic Activity*, 2015, no. 2, 2015, pp. 1-89.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

*Inconsistent Payments*

Evidence from the Federal Reserve Bank of Philadelphia's *Consumer Finance Institute COVID-19 Survey of Consumers* establishes the $125,000 income mark as a reasonable ceiling for discharge eligibility. As would be expected, borrowers with lower incomes have a lesser ability to make consistent payments on their loans. The survey shows that borrowers with incomes between $100,000 and $124,000 have rates of payment inconsistency – that is, the percentage of respondents who reported making no or "occasional" payments for their loans in 2019 – that are nearly double what they are for those with incomes between $125,000 and $149,000 (see Figure 1).



**Figure 1. Inconsistent Payment Rates (Occasional or No Payments Made in 2019), By Income**

*Source: Federal Reserve Bank of Philadelphia CFI COVID-19 Survey of Consumers*

Rates of regular repayment for borrowers earning $125,000 or above are roughly 14 percentage points (or 20%) above what they are for those earning between $100,000-$124,000.[30]  This suggests that the average borrower earning above $125,000 entered the pandemic on firmer financial footing with regards to loan payments, relative to those earning below the eligibility ceiling (see Figure 2).

---

[30] Analyses based on unpublished data provided by the Federal Reserve Bank of Philadelphia.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*



**Figure 2. Regular Payment Consistency in 2019, By Income**

*Source: Federal Reserve Bank of Philadelphia CFI COVID-19 Survey of Consumers*

*Future Payment Capacity*

Lower-income borrowers are less likely to report being able to repay future loans, an indicator of risk of delinquency or default. There is a break in repayment capacity at around $125,000. After forbearance, nearly 20 percent of borrowers earning between $100,000 and $124,000 expect to experience difficulty repaying loans, compared to 14 percent of those earning above $125,000 (see Figure 3).

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*



**Figure 3. Payment Capacity After Forbearance - "Partial" and "No Payments", By Income**

*Source: Federal Reserve Bank of Philadelphia CFI COVID-19 Survey of Consumers*

*Financial Security*

The financial insecurity of those with student loans falls as income rises, declining particularly steeply above $125,000.  Financial insecurity rates for borrowers with incomes between $100,000 and $124,000 are more than double those for borrowers with incomes between $125,000 and $149,000. Education loan holders with incomes exceeding the discharge eligibility ceiling report more positive sentiments concerning their financial security: only about 10 percent of borrowers with incomes greater than $125,000 report financial insecurity (see Figure 4).[31]

---

[31] Ibid.

9

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*



**Figure 4. Financial Insecurity Relative to Pre-Pandemic Education, By Income**

*Source: Federal Reserve Bank of Philadelphia CFI COVID-19 Survey of Consumers*

*Income and the Pandemic*

Survey data indicates that lower-income workers were disproportionately likely to become unemployed in the beginning of the pandemic.[32] In the summer of 2021, a Brookings analysis found that low-wage earners were overrepresented among "displaced" workers (workers on "permanent" layoff, meaning they lost their jobs and were not called back).[33] A rich economic literature indicates that such unemployment can have long-term scarring effects.[34] Students who left school in 2020 and 2021 are also projected to experience significant reductions in lifetime earnings.[35]

Because of this pattern of job loss, lower-income households also experienced greater material hardship due to the pandemic.[36] Compared with adults whose family employment was unaffected by the pandemic, they were twice as likely to report food insecurity, nearly three times as likely to report problems paying utility bills, and nearly four times as likely to report problems paying the rent or mortgage.

---

[32] Adams-Prassl, Abi, et al. "Inequality in the Impact of the Coronavirus Shock: Evidence from Real Time Surveys." *Journal of Public Economics*, 189, 104245, 2020; Despard, Mathieu, et al. "Covid-19 Job and Income Loss Leading to More Hunger and Financial Hardship." Brookings, 9 Mar. 2022.

[33] Bateman, Nicole, and Martha Ross. "The pandemic hurt low-wage workers the most and so far, the recovery has helped them the least." Brookings, 2021.

[34] Mroz, Thomas A., and Timothy H. Savage. "The Long-term Effects of Youth Unemployment." *Journal of Human Resources*, 41.2, 2006, pp. 259-293; Kahn, Lisa B. "The long-term labor market consequences of graduating from college in a bad economy." *Labour economics*, 17.2, 2010, pp. 303-316; Schwandt, Hannes, and Till Von Wachter. "Unlucky cohorts: Estimating the long-term effects of entering the labor market in a recession in large cross-sectional data sets." *Journal of Labor Economics*, 37.S1, 2019, pp. S161-S198.

[35] Friedman, John. "Lifetime Earnings Effects of the COVID-19 Recession for Students." Opportunity Insights Economic Tracker (2021).

[36] Karpman, Michael, and Stephen Zuckerman. "Average Decline in Material Hardship During the Pandemic Conceals Unequal Circumstances." Urban Institute, 2021.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

A literature review from the Department of Health and Human Services highlighted the disproportionate job losses for low-wage workers and the wide-reaching impacts of job loss on material hardship and food insecurity.[37] The review emphasizes that among low-wage workers, women and people of color were disproportionately impacted. The review notes that many COVID-19 relief measures initially missed, or were insufficient for, low-income families.

### 4.  Past Pell Receipt

A disproportionate number of Pell Grant borrowers are low-income. An analysis of Pell Grant borrowers for whom the Department has income information (from a FAFSA application or an IDR application) suggests that 99 percent of Pell Grant recipients have incomes below $125,000.[38]

Borrowers' status as former Pell recipients provides independent and valuable measures of their risk of delinquency and default, even in addition to current income. Rather than evaluating a borrower's current income, Pell Grant eligibility is based upon a broader set of data intended to be a more complete measure of family financial resources at the time of application. Because Pell Grant eligibility is determined on the basis of financial need, recipients typically have lower wealth and familial monetary resources at the time of receiving the grant.



**Figure 5: Difference in Default Rates Between Pell Grant Recipients and Non-Pell Grant Recipients as of 12/2021, by Imputed Income among borrowers who have been in repayment between 6-10 years**

*Percent Point Difference*

*Source: Department of Education*

---

[37] US Department of Health and Human Services, "The Impact of the First Year of the COVID-19 Pandemic and Recession on Families with Low Incomes." 2021.

[38] Department estimates using administrative data on Pell Grant borrowers who submitted a FAFSA or IDR application with 2020 or 2021 income information.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

Borrowers who received a Pell Grant in the past are at greater risk of delinquency and default, regardless of current income. Forty-two percent of Pell recipients default on their loans at least once, compared to just 18 percent of borrowers who never received a Pell Grant – a 24 percentage point difference. The relationship holds even when controlling for a borrower's imputed income. Indeed, at every band of imputed income, Pell Grant recipients are roughly *twice* as likely to default on their loans as non-Pell students.[39]

Moreover, the default rates for Pell Grant recipients with lower imputed income are especially high, with at least one in three Pell recipients in every imputed income band below $125,000 defaulting at least once. For borrowers with imputed incomes between $100,000 and $125,000, 32 percent of Pell Grant recipients default at least once, compared to 13 percent of non-Pell Grant recipients.[40]

Among enrolled students, Pell Grant recipients were disproportionately likely to be financially harmed by the pandemic. One recent study found that enrolled Pell Grant recipients were 20 percent more likely to lose a job during the pandemic, 17 percent more likely to see a drop in earnings, and 65 percent more likely to report facing food and housing insecurity than students who never received a Pell grant.[41]

Past experience suggests that past Pell recipients also struggle with their student loans at higher rates than their peers. A study that focused on borrowers who entered repayment before and after the Great Recession showed that Pell Grant recipients saw larger declines in repayment rates than non-Pell recipients.[42] As noted above, Pell Grant recipients also saw larger increases in default rates following recent natural disaster forbearances.

### 5. Parental Income for Dependent Students

The federal government has long considered parents' resources in allocating financial aid for enrolled dependent students. For example, under the Higher Education Act, parental income is a factor in dependent student borrowers' eligibility for financial aid, including student loans. Congress has long varied the origination terms of certain loans based upon families' ability to repay by providing subsidized student loans.

While current income is an effective indicator of former students' capacity to repay, it is not adequate to assess current students' ability to repay because most current students have low incomes. In this context, the Higher Education Act has long recognized that family income is a better indicator of capacity to repay because it is strongly correlated with children's expected income.

Each year, between 4 and 5 million borrowers enter repayment for the first time.[43] The pandemic has also caused additional borrowers to separate from school and enter repayment.[44] In fact, hundreds of thousands of borrowers leave mid-way through the semester or do not re-enroll the next semester. Additionally, around 300,000 borrowers make payments on their loans while they are in school.[45] Altogether, there is a

---

[39] Department of Education estimates using administrative federal student aid data and imputed income from Census data.

[40] Ibid.

[41] Rodríguez-Planas, Núria. "Hitting Where It Hurts Most: COVID-19 and Low-Income Urban College Students." *Economics of Education Review*, 87, 102233, 2022.

[42] Blagg, Kristin and Erica Blom. "Student debt repayment fell during the Great Recession. Borrowers from low-income backgrounds saw the steepest decline." Urban Institute, 2018.

[43] US Department of Education, "Digest of Education Statistics 2021." 2021, Table 332.50.

[44] Saul, Stephanie. "College Enrollment Drops, Even as the Pandemic's Effects Ebb." *The New York Times*, 26 May 2022.

[45] Based on analysis of 2019 FSA student loan data.

*DELIBERATIVE / PRE-DECISIONAL / CONFIDENTIAL*

significant population of borrowers who were enrolled last year but will nonetheless be impacted by resumption of payments.

### 6. Limitation to Existing Loans

The proposal would apply to loans that were outstanding on June 30, 2022, the end of the 2022-23 academic year. The terms of financial aid policies – such as the interest rate on new student loans and the maximum Pell grant – typically change each July 1. Moreover, extending eligibility into the new academic year risks generating incentives to borrow additional loans in anticipation of cancellation. It would also create arbitrary results based upon a school's academic schedule, the efficiency of its financial aid office, and the order in which it processed a particular student's financial aid awards.

# Exhibit B

*CONFIDENTIAL*



THE SECRETARY OF EDUCATION
WASHINGTON, DC 20202

DATE:                                    August 24, 2022

MEMORANDUM TO:          Richard Cordray
                                          Chief Operating Officer
                                          Federal Student Aid

FROM:                                   Miguel A. Cardona, Ed.D.
                                          Secretary of Education

SUBJECT:                              Pandemic-Connected General Loan Discharge and Payment Pause

In March 2020, Congress determined that, in light of the COVID-19 pandemic, it was necessary to provide relief to student loan borrowers by suspending certain payments and collections activity, and temporarily setting certain interest rates to zero percent. Under the authority granted to the Secretary of Education by the Higher Education Relief Opportunities for Students Act of 2003 ("HEROES Act"), I previously extended this relief through August 31, 2022.

This payment pause has delivered substantial relief to millions of loan borrowers, seeking to ensure that they are not in a worse position financially due to the pandemic. However, when loan payments resume, many borrowers will be at heightened risk of loan delinquency and default that could offset the benefits provided by the pause and leave borrowers worse off than they were before the pandemic. Many borrowers will experience challenges in the transition back to repayment. Additional steps are needed to address these challenges and reduce the likelihood of delinquency and default to ensure that borrowers are not in a worse position financially due to the pandemic with regard to their ability to repay their loans.

In order to ensure that borrowers subject to the payment pause are not placed in a worse position financially by the COVID-19 national emergency as they restart payments, I have determined to exercise my discretion under the HEROES Act to issue waivers and modifications necessary to effectuate the following actions:

- Discharge $10,000 of federal student loan balances for borrowers with individual incomes of under $125,000 or household incomes of under $250,000 during tax years 2020 or 2021. These discharges would be limited to loans that were originally outstanding as of June 30, 2022, and that are currently subject to the payment pause, including Direct Loans, Federal Family Education Loans held by the Department or by guaranty agencies, and Federal Perkins Loans held by the Department.

- Discharge an additional $10,000 in federal student debt for borrowers who meet these requirements and who also received a Pell Grant at some point in the past.

Page 2 *CONFIDENTIAL*

- Take the administrative steps needed to implement this discharge initiative, including the collection, maintenance, use, and dissemination of borrower information necessary to establish eligibility for the discharge under the relevant criteria and provide benefits under the initiative automatically to as many borrowers as possible utilizing income information available to the Department in compliance with applicable law.

- Develop a simple process for borrowers to attest to their incomes and for FSA to verify the income of a sample of those borrowers.

Based on current economic and public health conditions, and to provide time to successfully implement these measures needed to ensure that borrowers are not placed in a worse position financially due to the pandemic, I have also determined to extend those waivers and modifications specified in the December 11, 2020, *Federal Register* notice (85 Fed. Reg. 79856), that relate to the payment and collection of, and accumulation of interest on, federal student loans, and also extend the corresponding pause for Federal Family Education Loan Program loans held by guaranty agencies, as discussed in Dear Colleague Letter GEN-21-03 through December 31, 2022. Because I expect this extension to be the final extension of the payment pause, I further direct FSA to take all necessary steps to restart loan payments after December 31, 2022.

Miguel A. Cardona
U.S. Secretary of Education

8/24/22    9:25am
Date & Time

Exhibit C



**THE SECRETARY OF EDUCATION**
WASHINGTON, DC 20202

DATE:                       September 27, 2022

MEMORANDUM TO:              Dr. Nasser Paydar
                            Assistant Secretary for Postsecondary Education

                            Richard Cordray
                            Chief Operating Officer
                            Federal Student Aid

FROM:                       Miguel A. Cardona, Ed.D.
                            Secretary of Education

SUBJECT:                    Waivers Relating to Pandemic-Connected General Loan Discharge

On August 24, 2022, I notified Richard Cordray, Chief Operating Officer of Federal Student Aid, that I had determined to exercise my discretion under the HEROES Act to issue waivers and modifications necessary to (1) discharge up to $20,000 in federal student loan balances for borrowers who meet certain conditions and (2) take all administrative steps necessary to implement that determination.

In the interim, the Department has developed a comprehensive strategy to implement that determination.  As such, today I am issuing waivers and modifications to the provisions of 20 U.S.C. 1087, which applies to the Direct Loan Program under 20 U.S.C. 1087a and 1087e; 20 U.S.C. 1087dd(g); and 34 CFR part 674, subpart D, §§ 682.402 and 685.212 to provide that, notwithstanding any other statutory or regulatory provision, the Department will discharge the balance of a borrower's loans up to a maximum of: (a) $20,000 for borrowers who qualified for Pell Grants at the time they received the loans and had an Adjusted Gross Income ("AGI") below $125,000 for an individual taxpayer or $250,000 for borrowers filing jointly or as a Head of Household for the 2020 or 2021 Federal tax years; or (b) up to a maximum of $10,000 for borrowers who are eligible under those income thresholds but did not qualify for a Pell Grant at the time they received the loans. This waiver is applicable to borrowers with outstanding Direct Loans, FFEL loans held by the Department or subject to collection by a guaranty agency, and Perkins Loans held by the Department prior to July 1, 2022, and who are determined to be eligible by the Department.

Please take all necessary actions to implement these waivers and modifications and to provide notice of these waivers and modifications in the Federal Register.

# Exhibit D

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 1

COPYDOC

**0.4.66.1 One-Time Student Loan Debt Relief**

| | |
|---|---|
| **PAGE TITLE (browser tab/breadcrumbs)** | One-Time Student Loan Debt Relief |
| **URL** | https://studentaid.gov/debt-relief-announcement/one-time-cancellation |
| **Vanity URL (if any)** | N/A |
| **LOCATION** | https://studentaid.gov/debt-relief-announcement |
| **INVISION LINK** | |
| **PAGE GOAL** | Provide borrowers with additional details about one-time loan debt relief |
| **TARGET (Persona)** | college student, college grad, graduate student, parent borrower |
| **KEYWORDS/PHRASES** | loan, loans, forgiveness, discharge, income, debt, relief, cancellation, Biden debt relief plan, loan forgiveness, loan cancellation |
| **META DESCRIPTION (155 characters max)** | You can get up to $20,000 of one-time federal student loan debt relief. |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 2

**CONTENT**

| | |
|---|---|
| **H1 (Headline)** | |
| One-Time Student Loan Debt Relief | |
| | |
| **BODY** | |
| On Aug. 24, 2022, the Biden-Harris Administration announced a Student Debt Relief Plan that includes one-time student loan debt relief targeted to low- and middle-income families. | https://studentaid.gov/debt-relief-announcement/ |
| | |
| The U.S. Department of Education (ED) will provide up to $20,000 in debt relief to Federal Pell Grant recipients and up to $10,000 in debt relief to non-Pell Grant recipients. Borrowers with loans held by ED are eligible for this relief if their individual income is less than $125,000 (or $250,000 for households). | |
| | |
| Get up to $20,000 in federal student loan debt relief based on your income. | |
| | |
| **H2** | |
| What Do I Need to Know? | |
| | |
| **CARD** | |
| **H3** | |
| An online form will be available by Early in October 2022. Here are some steps you can take now and in the future. | |
| | |
| **H4** | |
| Step 1: Check if you're eligible | |
| | |
| **BODY** | |
| You're eligible for student loan debt relief if your annual federal income was below $125,000 (individual or married, filing separately) or $250,000 (married, filing jointly or head of household) in 20201 or 20210. | |
| • **$20,000 in debt relief:** If you received a Pell Grant in college and meet the income threshold, you'll be eligible for up to $20,000 in debt relief. | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 3

| | |
|---|---|
| • **$10,000 in debt relief:** If you did not receive a Pell Grant in college and meet the income threshold, you'll be eligible for up to $10,000 in debt relief. | |
| | |
| **H4** | |
| Step 2: Prepare | |
| | |
| **BODY** | |
| Here's what you can do to get ready and to make sure you get our updates:<br><br>• Log in to your account on StudentAid.gov and make sure your contact info is up to date. We'll send you updates by both email and text message, so make sure to sign up to receive text alerts. If it's been a while since you've logged in, or you can't remember if you have an account username and password (FSA ID), we offer tips to help you access your account.<br>• If you don't have a StudentAid.gov account (FSA ID), you should create an account to help you manage your loans.<br>• Make sure your loan servicer has your most current contact information so they can reach you. If you don't know who your servicer is, you can log in and see your servicer(s) in your account dashboard.<br>• To be notified when the process has officially opened, sign up at the Department of Education subscription page. | https://studentaid.gov/fsa-id/sign-in/landing/?redirectTo=/settings/edit-information/contact-information<br><br>https://studentaid.gov/fsa-id/sign-in/landing/?redirectTo=/settings/edit-information/communication-preferences<br><br>https://studentaid.gov/help-center/answers/article/help-accessing-account-fsa-id<br><br>https://studentaid.gov/fsa-id/create-account<br><br>https://studentaid.gov/fsa-id/sign-in/landing/?redirectTo=/dashboard<br><br>https://www.ed.gov/subscriptions |
| | |
| **H4** | |
| Step 3: Submit your application (when available) | |
| | |
| **BODY** | |
| The application will be available online ~~by early~~in October 2022. | |
| | |
| We'll share updates on this page and send you an email when the application is available. You'll have until Dec. 31, 2023, to submit your application. | |
| | |
| **H2** | |
| Federal Pell Grants | |
| | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 4

| | |
|---|---|
| **CARD** | |
| **H3** | |
| How Do I Know If I Ever Received a Federal Pell Grant? | |
| | |
| **BODY** | |
| Federal Pell Grants typically are awarded to undergraduate students with low or moderate income. | |
| | |
| Most borrowers can log in to StudentAid.gov to see if they received a Pell Grant. We display information about the aid you received, including Pell Grants, on your account dashboard and your "My Aid" pages. | |
| | |
| ==Log In to Your Account== | https://studentaid.gov/fsa-id/sign-in/landing |
| | |
| When you apply for debt relief, we'll make sure all borrowers who received a Pell Grant receive the full benefit of up to $20,000 in relief if they meet the income requirements. ED has data on all borrowers who received a Pell Grant. If you received a Pell Grant prior to 1994, that information won't display in StudentAid.gov, but you'll still receive the full benefit. | |
| | |
| **FAQ (ACCORDION)** | |
| If I have a Pell Grant, do I need to do anything to get the full $20,000 in debt relief? | |
| | |
| **BODY** | |
| Yes. You just need to submit your application for debt relief. We have a record of every student who has ever received a Federal Pell Grant. When you submit your application, we'll check our records to determine if you have a Pell Grant, which would qualify you for up to $20,000 in debt relief. You don't need to take any additional action to show us that you received a Pell Grant. | |
| | |
| **FAQ (ACCORDION)** | |
| Do I still qualify for the full $20,000 in debt relief if I received only one Pell Grant? | |
| | |
| **BODY** | |
| Yes. As long as you received at least one Pell Grant of any amount, you qualify for ~~the additional $2~~1~~0~~,000 in debt relief. This ~~additional $10,000~~debt relief will be applied to eligible loans, such as undergraduate, graduate, or parent loans. It doesn't matter if the Pell Grant was used for the same program of study or at the same school as your federal student loan(s). | |
| | |
| **FAQ (ACCORDION)** | |
| If I have parent PLUS loans and my child received a Pell Grant, can ~~the~~my child's~~full~~ $20,000 in debt relief be applied to my parent PLUS loans? | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 5

| | |
|---|---|
| **BODY** | |
| No. ~~The debt relief will be applied only to your child's loan(s)~~Eligibility for debt ~~relief is based on each borrower's situation~~. | |
| | |
| If a dependent student received a Pell Grant, up to $20,000 in debt relief will be applied to the student's loans—not to any loans their parent may have taken out. | |
| | |
| A parent who has taken out loans—including loans for their own studies or parent PLUS loans for their child—may qualify for debt relief if they meet the income eligibility criteria. If a parent also received a Pell Grant for their own studies, then the parent borrower may be eligible for up to $20,000 in relief on their loans. Otherwise, the parent borrower may be eligible for up to $10,000 in debt relief. | |
| | |
| **H2** | |
| Which Loans Are Eligible? | |
| **Most federal student loans are eligible**<br>Undergraduate and Graduate Direct Loans<br>Parent PLUS and Grad PLUS Loans<br>Consolidation Loans<br>Underlying loans disbursed on or before June 30, 2022<br>Federal Family Education Loan (FFEL)<br>Program Loans held by ED<br>Perkins Loans held by ED<br>Defaulted loans<br>ED-held or commercially serviced Subsidized, Unsubsidized, parent PLUS, grad PLUS, and Perkins held by ED | |
| | |
| **BODY** | |
| The following types of federal student loans with an outstanding balance as of June 30, 2022, are eligible for relief: | |
| | |
| • William D. Ford Federal Direct Loan (Direct Loan) Program loans | |
|    • ~~Subsidized loans~~ | |
|    • ~~Unsubsidized loans~~ | |
|    • ~~Parent PLUS loans~~ | |
|    • ~~Graduate PLUS loans~~ | |
| • Federal Family Education Loan (FFEL) Program loans held by ED or in default at a guaranty agency | |
| • Federal Perkins Loan Program loans held by ED | |
| • Defaulted loans (includes ED-held or commercially serviced Subsidized Stafford, Unsubsidized Stafford, parent PLUS, and graduate PLUS; and | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 6

| | |
|---|---|
| Perkins loans held by ED) | |
| ~~Consolidation loans are eligible for relief, as long as all of the underlying loans that were consolidated were first disbursed on or before June 30, 2022.~~ This means that subsidized loans, unsubsidized loans, ~~p~~Parent PLUS loans, and ~~g~~Graduate PLUS loans held by ED are eligible. Consolidation loans are also eligible for relief, as long as all of the underlying loans that were consolidated were ED-held loans and were disbursed under or before June 30, 2022. Additionally, consolidation loans comprised of any FFEL or Perkins loans not held by ED are also eligible, as long as the borrower applied for consolidation before Sept. 29, 2022. | Commented [WR1]: Please double check this in the final final |
| **FAQ (ACCORDION)** | |
| How do I know what kinds of loans I have? | |
| **BODY** | |
| You can identify your loan types by logging on to StudentAid.gov and selecting "My Aid" in the dropdown menu under your name. In the "Loan Breakdown" section, you'll see a list of each loan you received. You'll also see loans you paid off or consolidated into a new loan. If you expand "View Loans" and select the "View Loan Details" arrow next to a loan, you'll see the more detailed name for that loan. | |
| Direct Loans begin with the word "Direct." Federal Family Education Loan Program loans begin with "FFEL." Perkins Loans include the word "Perkins" in the name. If the name of your servicer starts with "Dept. of Ed" or "Default Management Collection System," your FFEL or Perkins loan is federally managed (i.e., held by ED). | |
| The "My Aid" section will also show you the servicer(s) for your loans. | |
| **FAQ (ACCORDION)** | |
| Are defaulted loans eligible for debt relief? | |
| **BODY** | |
| Yes, defaulted loans are eligible for debt relief. If you have a remaining balance on your defaulted loan(s) after relief is applied, consider ==getting or staying out of default through the Fresh Start initiative==. | https://studentaid.gov/announcements-events/default-fresh-start |
| **FAQ (ACCORDION)** | |
| Are private loans (i.e., non-federal loans) eligible for debt relief? | |
| **BODY** | |
| No. Private (non-federal) loans are not eligible for debt relief. If you consolidated federal loans into a private (non-federal) loan, the consolidated private loan is | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 7

| | |
|---|---|
| not eligible for debt relief. | |
| | |
| **FAQ (ACCORDION)** | |
| Are parent PLUS loans and graduate PLUS loans eligible for debt relief? | |
| | |
| **BODY** | |
| Yes. All ED-held loans, including PLUS loans for parents and graduate students, are eligible for relief. | |
| | |
| **FAQ (ACCORDION)** | |
| Are Federal Family Education Loans (FFEL) Program loans or Perkins Loans eligible for debt relief? | |
| | |
| **BODY** | |
| All loans eligible for the student loan payment pause are also eligible for relief, including loans held by ED and guaranty agencies. | |
| | |
| As of Sept. 29, 2022, borrowers with privately held federal student loans not held by ED **cannot** obtain one-time debt relief by consolidating those loans into Direct Loans. | |
| | |
| Borrowers with privately owned FFEL Program loans and Perkins Loans not held by ED who have applied to consolidate into the Direct Loan program prior to Sept. 29, 2022 are eligible for one-time debt relief through the Direct Loan program. ED is assessing whether to provide relief to borrowers with privately owned federal student loans, including FFEL and Perkins Loans, and is discussing this with private lenders. In the meantime, borrowers with privately held federal student loans can receive this relief by consolidating these loans into the Direct Loan program. All eligible borrowers will have until Dec. 31, 2023 to submit an application for debt relief. | |
| | |
| ED is assessing whether there are alternative pathways to provide relief to borrowers with privately owned federal student loans not held by ED, including FFEL Program loans and Perkins Loans, and is discussing this with private lenders. FFEL Joint Consolidation Loans, often referred to as spousal consolidation loans, are not eligible for consolidation into the Direct Loan program under current law. | |
| | |
| **H2** | |
| Frequently Asked Questions (FAQs) | |
| | |
| **H3** | |
| General Info About Debt Relief | |
| | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 8

| | |
|---|---|
| **FAQ (ACCORDION)** | |
| How can I find out how much debt relief I'll get? | |
| | |
| | |
| **BODY** | |
| If you meet the income requirements and have eligible loans, the amount of your debt relief will depend on your outstanding balance and whether you received a Federal Pell Grant. | |
| | |
| • If you received a Pell Grant, you can receive up to $20,000 in debt relief.<br>• If you didn't receive a Pell Grant, you can receive up to $10,000 in debt relief. | |
| | |
| If your outstanding loan balance is less than the maximum amount of debt relief you're eligible for, you'll receive relief only of your full loan balance. | |
| | |
| The application for debt relief will be available in October 2022. Once you submit your application, we'll determine your relief amount. | |
| **FAQ (ACCORDION)** | |
| What will I need to complete the application? | |
| | |
| **BODY** | |
| The application will be a short online form. You won't need your FSA ID, and you won't need to upload any documents to submit your application. Our goal is to provide borrowers a seamless and simple experience, and we're working closely with the servicers who will process the relief. | |
| If your outstanding loan balance is less than the maximum amount of debt relief you're eligible for, you'll receive only relief of your full loan balance. | |
| The application for debt relief will be available in October 2022. Once you submit your application for debt relief, we'll determine your relief amount. | |
| **FAQ (ACCORDION)** | |
| How will I know when debt relief has been applied to my account? | |
| | |
| **BODY** | |
| Your loan servicer will notify you when the relief has been applied to your account, with details on how the relief was applied. | |
| | |
| **FAQ (ACCORDION)** | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 9

| | |
|---|---|
| What happens if I still have a loan balance after debt relief is applied? | |
| | |
| **BODY** | |
| Loan balances remaining after relief will be re-amortized, meaning we will recalculate your monthly payment based on your new balance, potentially reducing your monthly payment. Your loan servicer will communicate your new payment amount to you. | |
| | |
| **FAQ (ACCORDION)** | |
| Am I eligible for a refund if I made voluntary payments during the pandemic? | |
| | |
| **BODY** | |
| Yes. You will automatically receive a refund of your payments during the payment pause if:<br><br>• you successfully apply for and receive debt relief under the Administration's debt relief plan, AND<br>• your voluntary payments during the payment pause brought your balance below the maximum debt relief amount you're eligible to receive but did not pay off your loan in full.<br><br>*For example, if you're a borrower eligible for $10,000 in relief; had a balance of $10,500 prior to March 13, 2020; and made $1,000 in payments since then—bringing your balance to $9,500 at the time of discharge—we'll discharge your $9,500 balance, and you'll receive a $500 refund.*<br><br>Other borrowers can still receive refunds on voluntary payments made after March 13, 2020, by contacting their servicer. It's important to note that these refunded payments will increase your loan balance and your monthly payments. If you expect to have a balance after discharge is applied and wish to request a refund, you can do so by contacting your servicer until Dec. 31, 2023.<br><br>If you consolidated your loan after March 13, 2020, refunds aren't available for any voluntary payments made prior to the consolidation.<br><br>Refund requests can only be made by you and refunded to you, even if someone else made a payment on your loan. | |
| | |
| **FAQ (ACCORDION)** | |
| Do I have to be repaying my loans to be eligible for debt relief? | |
| | |
| **BODY** | |
| No. Borrowers are eligible for debt relief regardless of whether they're in repayment, in school, or in grace, as long as they meet the income requirements | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 10

| | |
|---|---|
| and have eligible loans. | |
| | |
| **FAQ (ACCORDION)** | |
| If I have multiple loans, can I pick which loans get the relief? | |
| | |
| **BODY** | |
| We'll determine how ~~debt~~ relief gets applied to your loans. ~~See the next FAQ below for additional details. Federal Student Aid will make this determination and~~We'll then provide the guidance to loan servicers, who will ~~then~~ process the relief. See below for additional details. | |
| | |
| **FAQ (ACCORDION)** | |
| How will debt relief be applied to my loans? | |
| | |
| **BODY** | |
| For borrowers with multiple loans, we'll apply the relief in the following order: | |
| • Defaulted ED-held loans<br>• Defaulted commercial FFEL Program loans<br>• Non-defaulted Direct Loan Program loans and FFEL Program loans held by ED<br>• Perkins Loans held by ED | |
| | |
| If you have multiple loans in a program type (e.g., multiple Direct Loan Program loans), we'll apply the relief in the following order: | |
| • Apply relief to loans with highest statutory interest rate.<br>• If interest rates are the same, apply to unsubsidized loans prior to subsidized loans.<br>• If interest rate and subsidy status are the same, apply to the most recent loan.<br>• If interest rate, subsidy status, and disbursement date are the same, apply to the loan with the lowest combined principal and interest balance. | |
| | |
| **FAQ (ACCORDION)** | |
| Will my debt relief be taxed? | |
| | |
| **BODY** | |
| One-time student loan debt relief will not be subject to federal income taxes. State and local tax implications will vary. | |
| For most borrowers, you will ~~only~~ receive debt relief only if you submit an application. But some borrowers may be eligible for relief without applying. If you would like to opt out of debt relief for any reason ~~—~~ including because you are concerned about a state tax liability ~~—~~ you will be given an opportunity to opt out. (See below, "What if I don't want to receive debt relief?") ~~.~~ | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 11

| | |
|---|---|
| **FAQ (ACCORDION)** | |
| How do I get help if I have questions or need assistance? | |
| | |
| **BODY** | |
| We'll continue to update this page as we have more details. **The program information you can read here is the same information our contact center agents have at this time.** After the online application is live, support for the form will be available at 1-833-932-3439. | |
| | |
| **H3** | |
| Applying for Debt Relief | |
| | |
| **FAQ (ACCORDION)** | |
| Will any borrowers receive debt relief without applying? | |
| | |
| **BODY** | |
| Although most borrowers will have to apply for debt relief, we have income data on hand for around 8 million borrowers. These borrowers will get the relief without applying, unless they choose to opt out (see below, "What if I don't want to receive debt relief?"). | |
| | |
| **FAQ (ACCORDION)** | |
| How will I know if I qualify for debt relief without applying? | |
| | |
| **BODY** | |
| If we determine that you qualify for debt relief without applying, we'll send you an email and text message (if you're ==signed up for text alerts==). You don't have to take any action, unless you would like to opt out (see below, "What if I don't want to receive debt relief?"). We'll provide your information to your loan servicer to process your relief. | |
| | |
| We'll use *Free Application for Federal Student Aid* (FAFSA®) and income-driven repayment application information to identify borrowers—or, as appropriate, parents—who have submitted income data for tax years 2020~~1~~ or 2021~~0~~. We'll use this data to determine which borrowers meet the income requirements. If we have borrower data for both years, we'll use the year with the lower income. | |
| | |
| **FAQ (ACCORDION)** | |
| I'm a dependent student. Do I apply based on my income or my parents' income? | |
| | |
| ==BODY== | |
| If you were enrolled in school as a dependent student for financial aid purposes between July 1, 2021, and June 30, 2022, ~~then~~ your eligibility is based on parent income. After you fill out your own application form, we'~~ll~~ will contact you so your | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 12

| | |
|---|---|
| parent can complete a Parent Income Form. | |
| | |
| **FAQ (ACCORDION)** | |
| When will the online application be available? | |
| | |
| **BODY** | |
| The online application will be available ~~by early~~in October 2022. | |
| | |
| **FAQ (ACCORDION)** | |
| How do I know if you received my application? | |
| | |
| **BODY** | |
| When you submit your application for debt relief, you'll see a page online confirming your form was submitted. You'll also get a confirmation email from us, so make sure we have your most current email address. You can log in to StudentAid.gov and review your contact information. | https://studentaid.gov/fsa-id/sign-in/landing/?redirectTo=/settings/edit-information/contact-information |
| | |
| **FAQ (ACCORDION)** | |
| What happens if I applied for Public Service Loan Forgiveness (PSLF)? | |
| | |
| **BODY** | |
| We'll identify any borrower who submitted both an application for one-time student loan debt relief and a PSLF form. If you receive one-time student loan debt relief and are then determined to have been eligible for forgiveness under PSLF, we'll adjust your loan and apply the PSLF discharge. The PSLF discharge may provide a refund on certain eligible payments made after the borrower has already made 120 payments. | |
| | |
| **FAQ (ACCORDION)** | |
| How long do I have to apply for debt relief? | |
| | |
| **BODY** | |
| You'll have from October 2022 until Dec. 31, 2023, to submit your application for student loan debt relief. | |
| | |
| **FAQ (ACCORDION)** | |
| Is there a paper version of the debt relief application? | |
| | |
| **BODY** | |
| Initially, the application will be available only online. A paper version of the form will be made available at a future date, and you'll have until Dec. 31, 2023, to apply. | |
| | |
| **FAQ (ACCORDION)** | |
| What if I don't want to receive debt relief? | |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 13

| | |
|---|---|
| **BODY** | |
| For most borrowers, you will ~~only~~ receive debt relief only if you submit an application. But if you completed a *Free Application for Federal Student Aid* (FAFSA®) form for the 2022–23 school year or are enrolled in an income-driven repayment plan based on your 2020 or 2021 income, you may be eligible for relief without applying. If you would like to opt out of debt relief for any reason~~—~~,including because you are concerned about a state tax liability~~—~~,you' ~~will~~ be given an opportunity to opt out. | |
| | |
| **H2** | |
| Beware of Scams | |
| | |
| **FEATURE BOX** | |
| You might be contacted by a company saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. You **never** have to pay for help with your federal student aid. Make sure you work only with ED and our ~~trusted partners~~loan servicers, and never reveal your personal information or account password to anyone. Our emails to borrowers come from noreply@studentaid.gov, noreply@debtrelief.studentaid.gov, andor ed.gov@public.govdelivery.com. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov. | https://reportfraud.ftc.gov/#/ |
| | |
| [Feature box continues] | |
| CTA link H4 (in feature box) | |
| Learn how to avoid scams and what you can do if you're contacted by a scammer. | https://studentaid.gov/resources/scams |
| [Feature box ends] | |
| | |
| **H2** | |
| Get Support | |
| | |
| **BODY** | |
| We'll continue to update this page as we have more details. **At this time, our contact center agents have the same information you can read here.** After the online form is live, support for the form will be available at 1-833-932-3439. | |
| | |
| **ADDITIONAL LINKS** | |
| Debt Relief Announcement | https://studentaid.gov/debt-relief-announcement/ |
| Income-driven Repayment Plans | https://studentaid.gov/manage-loans/repayment/plans/income-driven |
| Public Service Loan Forgiveness | https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service |

FSA Content
Copywriter: Laura Nadel
SME:
Date: August 30, 2022
Release:
Page 14

| Who's My Servicer? | https://studentaid.gov/manage-loans/repayment/servicers |
|---|---|

# Exhibit E

Please contact DOED.DCC.JIRA@Accenturefederal.com with any questions related to access / tickets / issues.

---

 Digital Platform    DP-62485
# 0.4.66.1 debt relief info page -- content edits

## ⌄ Details

| | | | |
|---|---|---|---|
| Type: | ⊙ Content | Status: | **REFINEMENT** |
| Priority: | 🔺 0 - Critical | Resolution: | Unresolved |
| Affects Version/s: | None | Fix Version/s: | None |
| Component/s: | None | Security Level: | Not Applicable |
| Labels: | None | | |
| Document Type: | English Copy for Feature | | |
| Document Priority: | Routine Release | | |
| Functional Area: | Content Management | | |
| Page ID: | 0.4.66.1 | | |
| Requires Translation: | Yes | | |
| Functionality: | Mobile Web  Web | | |

## ⌄ Description

**{}{}EARLY MORNING BUILD 9/29/2022{}{}**

See redlined copydoc for edits. Please note there are punctuation changes that may be less obvious.

 Tina Pemberton Cindy Cameron

cc Valeria Pina ███████████ Erik Young

## ⌄ Attachments



Drop files to attach, or browse.

0.4.66.1 One-Time St
09/29/22 09:15 AM    369 kB

## ⌄ Issue Links

**is linked to**

⊙ DP-62483 0.4.66 debt relief announcement -- content edits/link treatment    🔺 **REFINEMENT**

## ⌄ Activity

⌄ 🅻🅽 Laura Nadel added a comment - 6 days ago - edited    ↑

0.4.66.1 One-Time Student Loan Debt Relief 2022-09-28d RTL.docx reflects all changes, including those made in UAT.

cc Valeria Pina Cindy Cameron Tina Pemberton

Edit   Delete   ☺

## ⌄ People

Assignee:

Assign to me

Reporter:
👥 Laura Nadel

ACN Owner:

FSA Owner:
👥 Laura Nadel

External Group:
DCC_ALL_USERS, FSA_USERS

Votes:
0

Watchers:
2 Stop watching this issue

### ⌄ Dates

Created:
1 week ago 10:43 PM

Updated:
5 days ago 12:35 PM

Target Completion Date:
09/29/22

### ⌄ Agile

View on Board

# Exhibit F

**Laura Nadel (Jira)**

| | |
|---|---|
| **From:** | Laura Nadel (Jira) |
| **Sent:** | Wednesday, September 28, 2022 10:45 PM |
| **To:** | Pemberton, Tina |
| **Subject:** | [dcc jira] Updates for DP-62485: 0.4.66.1 debt relief info page -- content edits/link treatment |

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

This issue has been **CREATED**
**You've been mentioned in the issue description.**

Digital Platform / ⊘ DP 62485   **REFINEMENT**

# 0.4.66.1 debt relief info page -- content edits/link treatment

View issue   ·   Add comment

## Issue created

🔵 **Laura Nadel** created this issue on 09/28/22 10:43 PM

| | |
|---|---|
| Summary: | 0.4.66.1 debt relief info page   content edits/link treatment |
| Issue Type: | ⊘ Content |
| Assignee: | ▇▇▇▇ |
| Created: | 09/28/22 10:43 PM |
| Priority: | 🔺 0   Critical |
| Reporter: | Laura Nadel |
| Security Level: | Not Applicable |
| ACN Owner: | ▇▇▇▇ |
| Document Priority: | Routine Release |
| Document Type: | English Copy for Feature |
| FSA Owner: | Laura Nadel |
| Functional Area: | Content Management |
| Functionality: | Mobile Web, Web |
| Owning Workstream: | Digital Platform |

| Page ID: | 0.4.66 |
| Requires Translation: | Yes |
| Target Completion Date: | 09/29/22 |
| Description: | **EARLY MORNING BUILD 9/29/2022**<br>See redlined copydoc for edits. Please note there are punctuation changes that may be less obvious.<br>▬▬▬▬▬▬ ▬▬▬▬▬▬ Tina Pemberton Cindy Cameron |

This message was sent by Atlassian Jira (v8.20.10#820010-sha1:ace47f9)

If image attachments aren't displayed, see this article.
Get Jira notifications on your phone! Download the Jira Server app for Android or iOS.