# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

November 14, 2022

Mr. James A. Campbell
ATTORNEY GENERAL'S OFFICE
2115 State Capitol
P.O. Box 98920
Lincoln, NE  68509-0000

      RE:  22-3179  State of Nebraska, et al v. Joseph Biden, Jr., et al

Dear Counsel:

      The court today issued an opinion in this case.

                                          Michael E. Gans
                                          Clerk of Court

CRJ

Enclosure(s)

cc:     Honorable Henry Edward Autrey
        Mr. Simon Christopher Brewer
        Ms. Sarah Carroll
        Mr. Mark Chenowith
        Ms. Courtney Dixon
        Mr. Theodore H. Frank
        Ms. Shannon Marie Grammel
        Mr. Dylan L. Jacobs
        Mr. Cody Taylor Knapp
        Mr. Samuel Paul Langholz
        Ms. Sheng Li
        Mr. Gregory J. Linhares
        Mr. Robert Charles Merritt
        Mr. Brian David Netter
        Mr. Michael David Pepson
        Mr. Thomas Pulham
        Mr. Michael Raab
        Mr. Samuel Rebo
        Mr. Dean John Sauer
        Mr. J. Emory Smith Jr.

Mr. Michael E. Talent
Mr. John Julian Vecchione

District Court/Agency Case Number(s):   4:22-cv-01040-HEA

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

November 14, 2022

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  22-3179  State of Nebraska, et al v. Joseph Biden, Jr., et al

Dear Sir or Madam:

      An opinion was filed today in the above case.

      Counsel who represented the appellants was James A. Campbell, Solicitor General, of Lincoln, NE., Dean John Sauer, Solicitor General, of Jefferson City, MO., Michael E. Talent, Deputy Solicitor General, of Saint Louis, MO.

      Counsel who represented the appellees was Sarah Carroll, USDOJ, CIVIL, of Washington, DC., Michael Raab, USDOJ, CIVIL, of Washington, DC., Simon Christopher Brewer, USDOJ, CIVIL, of Washington, DC., Courtney Dixon, USDOJ, CIVIL, of Washington, DC., Thomas Pulham, USDOJ, CIVIL, of Washington, DC.

      Counsel who represented the amicus group Hamilton Lincoln Law Institute, was Theodore H. Frank, of Washingon, DC.

      Counsel who represented the amicus group Americans for Prosperity Foundation, was Michael David Pepson, of Arlington, VA.

      Counsel who represented the amicus group New Civil Liberties Alliance, was Mark Chenowith, of Washington, DC., Sheng Li, of Washington, DC., John Julian Vecchione, of Washington, DC.

      The judge who heard the case in the district court was Honorable Henry Edward Autrey. The judgment of the district court was entered on October 20, 2022.

      If you have any questions concerning this case, please call this office.

                                                          Michael E. Gans
                                                         Clerk of Court

CRJ

Enclosure(s)

cc:   Lois Law
      MO Lawyers Weekly

District Court/Agency Case Number(s):   4:22-cv-01040-HEA

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3179
_____

State of Nebraska; State of Missouri; State of Arkansas;
State of Iowa; State of Kansas; State of South Carolina

*Plaintiffs - Appellants*

v.

Joseph R. Biden, Jr., in his official capacity as the President of the United States of America; Miguel Cardona, in his official capacity as Secretary, United States Department of Education; United States Department of Education

*Defendants - Appellees*

------------------------------

Hamilton Lincoln Law Institute; Americans for Prosperity Foundation; New Civil Liberties Alliance

*Amici on Behalf of Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri
_____

Submitted: October 24, 2022
Filed: November 14, 2022
[Published]
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Whatever the eventual outcome of this case, it will affect the finances of millions of Americans with student loan debt as well as those Americans who pay taxes to finance the government and indeed everyone who is affected by such far-reaching fiscal decisions. As such, we approach the motion before us with great care.

This case centers on the plaintiff States' request to preliminarily enjoin the United States Secretary of Education ("Secretary") from implementing a plan to discharge student loan debt under the Higher Education Relief Opportunities for Students Act of 2003, Pub. L. No. 108-76, 117 Stat. 904 (codified at 20 U.S.C. §§ 1098aa–1098ee) ("HEROES Act"). *See* Federal Student Aid Programs (Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program), 87 Fed. Reg. 61,512, 61,514 (Oct. 12, 2022) (to be codified at 34 C.F.R. pts. 674, 682, 685). The States contend the student loan debt relief plan contravenes the separation of powers and violates the Administrative Procedure Act because it exceeds the Secretary's authority and is arbitrary and capricious.

The district court denied the States' motion for a preliminary injunction and dismissed the case for lack of jurisdiction after determining none of the States had standing to bring the lawsuit. Key to the district court's rationale was its conclusion that the State of Missouri could not rely on any harm the Missouri Higher Education Loan Authority ("MOHELA") might suffer on account of the Secretary's cancellation of debt. The States appealed and moved for a preliminary injunction pending appeal. We grant the motion for the following reasons.

"In ruling on a request for an injunction pending appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a preliminary injunction." *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982). This inquiry includes "balancing the equities between the parties." *Id.* We ask "whether the

balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 370 (8th Cir. 1991) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).  In circumstances "where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less." *Dataphase*, 640 F.3d at 113; *see also Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir. 1978) ("If the balance tips decidedly towards the plaintiffs and the plaintiffs have raised questions serious enough to require litigation, ordinarily the injunction should issue.").

The district court's analysis began and ended with standing.  Standing is a threshold issue since it is essential to our jurisdiction.  *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).  We begin by examining the standing of the State of Missouri and, like the district court, focus on MOHELA. MOHELA's unique mix of legal attributes and authority have led to differing opinions as to whether it is an "arm of the state" of Missouri for purposes of being entitled to sovereign immunity.  The core issue before this court, however, is whether the alleged harm from the Secretary's debt discharge plan, considering the role of MOHELA, is sufficient to meet the requirements for Article III standing for Missouri.

The relationship between MOHELA and the State of Missouri is relevant to the standing analysis.  MOHELA was created by the General Assembly of Missouri. *See* Mo. Rev. Stat. § 173.360.  It is governed by a seven-member board composed of five members appointed by the Governor of Missouri, as well as the Missouri State Commissioner of Higher Education and a member of the Missouri State Coordinating Board of Higher Education.  *Id.*  After its creation, the Missouri General Assembly expanded MOHELA's purpose to include "support[ing] the efforts of public colleges and universities to create and fund capital projects." *Id.*  Relatedly, the General Assembly established the Lewis and Clark Discovery Fund ("LCD Fund") from which the General Assembly may annually appropriate

moneys for certain purposes, including "funding of capital projects at public colleges and universities." *Id.* § 173.392. Most significantly, Missouri law, *id.* § 173.385.2, specifically directs MOHELA to distribute $350 million "into a fund in the State Treasury" for this program. MOHELA FY 2022 Financial Statements, at 20, available at https://tinyurl.com/4chp295x. MOHELA has met part of its obligation to the State treasury, but the "remaining unfunded amount . . . was $105.1 million as of June 30, 2022." *Id.*

Given this statutory framework, MOHELA may well be an arm of the State of Missouri under the reasoning of our precedent. *See Pub. Sch. Ret. Sys. of Mo. v. St. Bank & Trust Co.*, 640 F.3d 821, 826–27, 833 (8th Cir. 2011) (applying the test to determine whether sovereign immunity applies and holding Missouri public school employment retirement systems were arms of the state). In fact, a number of district courts have concluded that MOHELA is an arm of the state. *See, e.g.*, *Good v. U.S. Dep't of Educ.*, No. 21-CV-2539-JAR-ADM, 2022 WL 2191758, at *4 (D. Kan. June 16, 2022); *Gowens v. Capella Univ., Inc.*, No. 4:19-CV-362-CLM, 2020 WL 10180669, at *4 (N.D. Ala. June 1, 2020); *see also In re Stout*, 231 B.R. 313, 316–17 (Bankr. W.D. Mo. 1999). *But see Dykes v. Mo. Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *4 (E.D. Mo. July 29, 2021); *Perkins v. Equifax Info. Servs., LLC*, No. SA-19-CA-1281-FB (HJB), 2020 WL 13120600, at *5 (W.D. Tex. May 1, 2020).

But even if MOHELA is not an arm of the State of Missouri, the financial impact on MOHELA due to the Secretary's debt discharge threatens to independently impact Missouri through the LCD Fund. It is alleged MOHELA obtains revenue from the accounts it services, and the total revenue MOHELA recovers will decrease if a substantial portion of its accounts are no longer active under the Secretary's plan. This unanticipated financial downturn will prevent or delay Missouri from funding higher education at its public colleges and universities. After all, MOHELA contributes to the LCD Fund but has not yet met its statutory obligation.

-4-

Due to MOHELA's financial obligations to the State treasury, the challenged student loan debt cancellation presents a threatened financial harm to the State of Missouri. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019); *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). Consequently, we conclude Missouri has shown a likely injury in fact that is concrete and particularized, and which is actual or imminent, traceable to the challenged action of the Secretary, and redressable by a favorable decision. Missouri, therefore, likely has legal standing to bring its claim. And since at least one party likely has standing, we need not address the standing of the other States. *See Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d 1199, 1203 (8th Cir. 1992). Likewise, we need not decide whether the Secretary's standing argument as to harm alleged to Arkansas and Nebraska is actually better viewed as a mootness argument. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (discussing the importance of the distinction and the heavy burden of establishing mootness once a live case has allegedly become moot due to voluntary cessation of conduct).

Having addressed the threshold standing issue, we turn to the balancing of the equities and the probability of success on the merits. Not only do the "merits of the appeal before this court involve substantial questions of law which remain to be resolved," *Walker*, 678 F.2d at 71, but the equities strongly favor an injunction considering the irreversible impact the Secretary's debt forgiveness action would have as compared to the lack of harm an injunction would presently impose. Among the considerations is the fact that collection of student loan payments as well as accrual of interest on student loans have both been suspended. We conclude "the equities of this case require the court to intervene to preserve the status quo pending the outcome" of the States' appeal, *id.*, and that the States have satisfied the standard for injunctive relief pending review, *see D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 999–1001 (8th Cir. 2019) (discussing the standard for preliminary injunctive relief).

Finally, we have carefully considered the Secretary's request that we limit the scope of any temporary relief. "Crafting a preliminary injunction is an exercise of

discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam).  As the Supreme Court has explained, "one of the 'principles of equity jurisprudence' is that 'the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.'" *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  Part of our consideration is whether the injunctive relief is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994), and "workable," *North Carolina v. Covington*, 137 S. Ct. 1624, 1625 (2017) (per curiam).

We conclude that, at this stage of the litigation, an injunction limited to the plaintiff States, or even more broadly to student loans affecting the States, would be impractical and would fail to provide complete relief to the plaintiffs.  MOHELA is purportedly one of the largest nonprofit student loan secondary markets in America.  It services accounts nationwide and had $168.1 billion in student loan assets serviced as of June 30, 2022.  *See Rodgers*, 942 F.3d at 458.  Given MOHELA's national role in servicing accounts, we discern no workable path in this emergency posture for narrowing the scope of relief.  And beyond Missouri, tailoring an injunction to address the alleged harms to the remaining States would entail delving into complex issues and contested facts that would make any limits uncertain in their application and effectiveness.  Although such complexities may not counsel against limiting the scope of an injunction in other contexts, here the Secretary's universal suspension of both loan payments and interest on student loans weighs against delving into such uncertainty at this stage.

We GRANT the Emergency Motion for Injunction Pending Appeal.  The injunction will remain in effect until further order of this court or the Supreme Court of the United States.

_____